AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Oregon

FILED 30 MAY '18 11:56 USDC-ORP

United States of America
v.
James Campbell CARDWELL

Case No. '18-MJ-113

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **May 18, 2018 to May 29, 2018** in the county of **Multnomah** in the District of **Oregon**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, and 952(a) <br><br> 18 U.S.C. §§ 545 and 924(c) | The defendant (1) knowingly and willfully conspired to import into the United States, Methylenedioxymethamphetamine (also known as MDMA); (2) knowingly and willingly conspired to smuggle into the United States MDMA; (3) knowingly and intentionall possessed with intent to distribute a controlled substance containing detectable amounts of MDMA and Cocaine; and, (4) knowingly possessed a firearm in furtherance of a drug trafficking crime. |

This criminal complaint is based on these facts:

See Affidavit of HSI Special Agent Guy Gino.

☑ Continued on the attached sheet.

Sworn via phone on 5/30/2018 at 11:25am
(FRCP 4.1)

*Complainant's signature*

Guy Gino, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/30/2018

*Judge's signature*

City and state: Portland, Oregon

Hon. Stacie F. Beckerman, U.S. Magistrate Judge
*Printed name and title*

## Affidavit in Support of Criminal Complaint
## and Application for an Arrest Warrant

I, Guy Gino, being first duly sworn, depose and say:

### Introduction and Agent Background

1. I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses. I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon. Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996. I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846, 848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970. During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling and theft. I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement

officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations. I am currently detailed to the High Intensity Drug Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's Drugs and Vice Division in Portland, Oregon.

2. This affidavit is offered in support of a criminal complaint and arrest warrant for James Campbell CARDWELL. Based upon the forgoing facts, I have probable cause to believe that, CARDWELL knowingly and willfully conspired to import into the United States Methylenedioxymethamphetamine (also known as MDMA); knowingly and willingly conspired to smuggle into the United States MDMA; knowingly and intentionally possessed with intent to distribute a controlled substance containing detectable amounts of MDMA and Cocaine; and knowingly possessed a firearm in furtherance of a drug trafficking crime, all in violation of 21 U.S.C. §§ 841(a)(1), 846, 952(a); and, 18 U.S.C. §§ 545 and 924(c).

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

///

///

## Applicable Law

4.    The Controlled Substances Act (CSA) is the statue prescribing federal U.S. drug policy under which the manufacture, importation, possession, use and distribution of certain substances is regulated. The CSA classified drugs into five schedules. Schedule I drugs, substances or chemicals are defined as drugs with no currently accepted medical use and a high potential for abuse. Schedule I drugs are the most dangerous drugs of all the drug schedules with potentially severe psychological or physical dependence. MDMA is a Schedule I controlled substance as defined by 21 U.S.C. § 802. Schedule II drugs are drugs or other substances that have a high potential for abuse, they have a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, and abuse of the drug or other substances may lead to severe psychological or physical dependence. Cocaine is a Schedule II controlled substance as defined by 21 U.S.C. § 802.

5.    Pursuant to 21 U.S.C. § 952(a), it is unlawful to import into the customs territory of the United States, from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter, or ephedrine, pseudoephedrine, or phenylpropanolamine.

6.    Pursuant to 18 U.S.C. § 545, it is unlawful for any person to knowingly and willfully, with intent to defraud the United States, smuggle, or clandestinely introduce or attempt to smuggle or clandestinely introduce into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or whoever fraudulently or knowingly

**Affidavit in Support of Criminal Complaint and Arrest Warrant**                                                **Page 3**

imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

7. Pursuant to 21 U.S.C. § 841(a)(1), it is unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Pursuant to 21 U.S.C. § 846 it is unlawful for anyone to conspire or attempt to violate 21 U.S.C. § 841(a)(1).

8. Pursuant to 18 U.S.C. § 924(c), it is unlawful for anyone to knowingly possess a firearm in furtherance of a drug trafficking crime.

## Statement of Probable Cause

9. On May 18, 2018, Customs and Border Protection Officers assigned to the John F. Kennedy International U.S. Mail Branch contacted HSI Portland Special Agent Lindsay Wills via email regarding an international package containing 261 grams of Methylenedioxymethamphetamine chunks (hereinafter "MDMA/Ecstasy"). The MDMA was discovered during a border inspection at the JFK International U.S. Mail Branch. The package, identified as USPS Air Mail Center bearing tracking # RM276937999DE, was imported from Germany with a destination of "Heidi Gravier, 3721 North Russet Street, Portland, Oregon 97217."

10. On May 18, 2018, CBP Officers field tested the suspect substance inside the parcel using Mistral Group PDT Test kit # 180, 101 and 164, which showed positive results for a general narcotic compound, amphetamines and for MDMA/Ecstasy. All tests returned positive results for the presence of narcotics with test #164 showing positive for MDMA/Ecstasy. I know

**Affidavit in Support of Criminal Complaint and Arrest Warrant**            **Page 4**

that Methylenedioxymethamphetamine or MDMA/Ecstasy is Schedule I controlled substance. Furthermore, I know based on my training and experience that MDMA/Ecstasy is used in personal amounts of sub-gram quantities. I also know that a person possessing 261 grams of MDMA/Ecstasy possesses it with intent to distribute, as that amount is well beyond what would be considered personal use.

11. On May 18, 2018, HSI Portland, Oregon agreed to attempt to conduct a controlled delivery of Subject Parcel, to the addressed recipient noted on the shipping label: "Heidi Gravier, 3721 North Russet Street, Portland, Oregon 97217."

12. On May 21, 2018, US Postal Inspector Sale checked the status of the parcel RM276937999DE in the USPS Product Tracking System (PTS). PTR is the system that allows customers to check and/or receive updates to the progress of parcels as they travel through the USPS delivery system. IP address 73.11.32.139 checked the status of parcel RM276937999DE on May 15, 2018, at 0513 CDT and 1133 CDT. IP address 71.63.152.116 checked the status of parcel RM276937999DE on May 14, at 0213 CDT and 0216 CDT. IP address 2601:1c0:4200:1f80:1cb4:743e:ecb2:ec77 checked the status of parcel RM276937999DE on May 15, 2018, at 1628 CDT and 2249 CDT.

13. On May 21, 2018, HSI served administrative subpoenas to Comcast requesting IP address information for the above IP addresses. On May 22, 2018, Comcast returned subpoena providing information that IP address s 71.63.152.116 and 2601:1c0:4200:1f80:1cb4:743e:ecb2:ec77 was utilized by their subscriber James CARDWELL at the service address: 9915 SW Frewing St. Apt 3, Tigard, OR 97223-5042.

14. On May 28, 2018, this court authorized a search warrant for James Campbell CARDWELL's residence located at 9915 SW Frewing St. Apt 3, Tigard, OR 97223.

**Affidavit in Support of Criminal Complaint and Arrest Warrant**            **Page 5**

15. On May 29, 2018, Law enforcement executed a search warrant at CARDWELL's residence and, inside CARDWELL's bedroom, they located a Glock, Model 19 Gen 4 9 mm Pistol bearing serial # BFFB651, also found next to the weapon was a magazine containing numerous live 9mm rounds. I know that this firearm was manufactured outside the District of Oregon and traveled in interstate commerce prior to arriving here. I also know, based upon my training and experience, that firearms are a "tool of the trade" for drug dealers and are used in furtherance of their drug trafficking activities to protect their illegal product and the money they earn from drug dealing. I also know that drug dealers will often arm themselves to deal with and threaten or harm unhappy drug customers or drug customers who have wronged or stolen from them.

16. During the search of CARDWELL's residence, investigators also discovered five pre-labeled mailing envelopes containing Mylar sealed bags. Inside the Mylar sealed bags contained another zip-lock style baggie which contained a white crystalline powder which field tested positive as MDMA. The quantities of these envelopes were: 1.5g, 1.5g, 3.7g, 1.5g and 1.5g totaling 9.7 grams. The envelopes all had fictitious return addresses listed and were addressed to different locations in the U.S. and were ready to be mailed.

17. Investigators also discovered the following noteworthy items indicative of drug distribution:

- Two (2) digital scales with white residue.
- Hamilton Beach Coffee Grinder with white powder residue.
- Hundreds of extra small zip-lock style baggies.
- An Apple i-Pad.
- Computers.

Affidavit in Support of Criminal Complaint and Arrest Warrant                             Page 6

- Several cellular phones.

- Six (6) pre-packaged zip lock bags containing suspected MDMA in the following quantities 2.1g, 1.6g, 1.6g, 1.5g, 3.1g, and 1.7g, totaling 11.6 grams.

18. Investigators conducted a preliminary forensic examination on CARDWELL's i-Pad. During the examination, I was able to observe messages on May 25, 2018, between CARDWELL and two other individuals who were using the WICKR app. WICKR is a secure military grade encrypted messaging platform.

19. During this exchange, CARDWELL begins the group message stating ""RM276937999DE" "Stuck after Customs". CARDWELL also stated "Yes a vendor was being dishonest.. isellcandy on dream. You can check there ratings. Multiple complaints". CARDWELL later writes instead of ordering a "too good to be true "domestic price . I opted for a great international rate and a great domestic option as well." CARDWELL is asked "but if package is snagged it's still with escrow yes ?" to which CARDWELL responds " oh yeah full escrow" " disputed rn" " I dropped my veteran vebdor encryption signatures so I will win."

20. In reviewing this exchange, I immediately recognized "RM276937999DE" as the parcel law enforcement delivered to Heide GARVIER's residence. I also know that it was ordered from the Dream Market vendor" isellcandy" on the Dark net site Dream Marketplace. Also, when CARDWELL mentions he disputed the parcel, I know that he informed the site that he did not get his parcel, and in that situation Dark net site's moderator will review both sides and decide which party they will release the escrow to. More importantly CARDWELL self -identifies that he has been a vendor on that site for a long time when he stated he "dropped my veteran vendor encryption signatures." This

**Affidavit in Support of Criminal Complaint and Arrest Warrant**                    **Page 7**

means he would supply the moderator with the PGP encryption signature of his Vendor profile so the moderator would be able to see that he is trusted and reputable vendor on the site.

21. On May 28, 2018, this court also authorized a search warrant for Gordon CADY's residence located at 3211 SE Milwaukie Avenue, Portland OR 97202 as part of this investigation.

22. On May 29, 2018, Law enforcement executed a search warrant at CADY's residence and located $13,545.00 in U.S. currency that as banded. 341 grams of suspected Xanax pills, 91.8 grams of cocaine, 2.1 grams of Heroin, as well as an assortment of other small baggies containing pills, white powders and crystalized powders suspected of being narcotics and all packaged for distribution.

23. CADY agreed to speak with investigators after receiving his *Miranda* rights. When questioned on to why he would have checked the tracking number of the parcel containing 261 grams of MDMA, CADY informed that he checked the tracking number after receiving a link from James CARDWELL. CADY stated that CARDWELL and he agreed to split the purchase of the MDMA and "some Ketamine" and that's why CADY checked the tracking number.

24. CADY further informed that CARDWELL started to carry a gun and he was becoming more and more paranoid as his drug use increased. CADY stated that he and CARDWELL had arranged to purchase a large amount of ketamine and MDMA from a source only known to CADY as "T". CADY stated that CARDWELL had arranged the deal and that CADY met the two at CADY's apartment in Tigard. CADY added that he brought $16,000 in cash to the apartment. CADY stated that CARDWELL contributed cash to the

deal, CADY could not recall the exact amount but thought it was around $10,000. After giving his cash to CARDWELL, CADY left the apartment. CADY told investigators that "T" was to order the items online with the money and then provide the controlled substances to CADY and CARDWELL.

25.    After a period of time CADY stated that "T" was not returning CARDWELL's phone calls. "T" had taken the money and ripped the two off. Both CADY and CARDWELL were out a lot of money and were extremely upset. CADY told me that CARDWELL used a paid online person search site to find information about "T". CADY did not know "T"'s true identity but stated that CARDWELL did. CADY stated the CARDWELL was manic about finding "T". He added that CARDWELL used the information from his online research and did surveillance on a house he believed to belong to "T". CADY stated that during that time period he had seen CARDWELL carrying a black Glock semi-automatic handgun. CARDWELL told CADY that he was going to do whatever he had to do to get their money back. Ultimately through surveillance, CARDWELL determined that the address he discovered for "T" was incorrect. CADY added that CARDWELL is still looking for "T".

26.    I believe I was able to corroborate a portion of CADY's story during my review of CARDWELL's i-Pad. On May 5, 2018, CARDWELL is conversing with another individual using the secure messaging service "signal." In this conversation, CARDWELL and the other reference two individuals as "Thief" and "Thief's Girl." It is apparent to me that they are both upset for not receiving money. CARDWELL writes "Looks like being slow paid off. 2 diff vehicles @ Thief's girlfriends house. Both didn't have plates. Assuming they got new cars." The other individual writes "Not sure I see how waiting to realize they are spending our money is paying off. The simple fact that he isn't returning call and no

package has shown up tell me what I need to know. This just tells me they have let money to acquire when I go acquire it. Sounds like it's to move in and handle this." CARDWELL replies "I can get aerial footage with a drone or plant a vehicle with a camera" "Quiet neighborhood good police" "I'm placing a vehicle with a camera and a hotspot either next to his place. Checking battery life rn" "Fuckkkkk" "With a half convincing uniform and vehicle I think you could just wait till he takes his dog out and "arrest" him :/"

27.     Furthermore, I believe I was able to identify "T" by screenshots of a house, and paid background reports CARDWELL had on the device a week prior to that conversation.

28.     On May 29, 2018, Investigators interviewed Heidi GRAVIER, who was arrested on state charges of Possession of a Controlled Substance after she was observed purchasing heroin. After receiving her *Miranda* rights, GRAVIER admitted to investigators that CARDWELL was her source of supply for cocaine. GRAVIER admitted that she sold cocaine to support her Heroin addiction.

29.     GRAVIER further informed that she would allow CARDWELL to have parcels sent from international locations and had done it in the past. GRAVIER was able to remember one specific time that she accepted a parcel delivered in her name from Poland.

30.     GRAVIER explained that she never knew what was in these parcels but figured it was drugs and still allowed CARDWELL to use her address.

31.     I was able to review GRAVIER's text messages in which I observed GRAVIER negotiating the sale of cocaine to multiple individuals on several occasions. Furthermore, during my review I was able to identify that GRAVIER also had a conversation with CARDWELL on May 24, 2018, via text message which goes as follows:

GRAVIER: "I need a job"

CARDWELL: "why ..Did you do all the drugs you were supposed to sell"

GRAVIER: "No sold them and re upped and sold those too"

GRAVIER: "And then didn't have anyone to get more through"

GRAVIER: "Where can I get some"

CARDWELL: "Which One"

GRAVIER: "We work which drugs were you talking about ?"

CARDWELL: "What illegal Narcotics are you looking for lol"

GRAVIER: "well I need more bars"

GRAVIER: "JK those and blow"

GRAVIER: " I can get it but I want good stuff"

CARDWELL: "u have ( emoji for money )?

GRAVIER: "Duh"

32. When I asked GRAVIER if she paid the cocaine she received from CARDWELL, GARVIER stated no because she would clean his house and do favors for him in exchange.

33. Based on my training and experience, I believe that GRAVIER would allow CARDWELL to ship drug laden parcels to her house in exchange for free cocaine. I believe that CARDWELL would use GRAVIER's address in an effort to evade law enforcement.

34. I therefore believe that there is probable cause to believe that, CARDWELL knowingly and willfully conspired to import into the United States, Methylenedioxymethamphetamine (also known as MDMA); knowingly and willingly conspired to smuggle into the United States MDMA; knowingly and intentionally possessed with intent to distribute a controlled substance containing a detectable amounts of MDMA

and Cocaine; and, knowingly possessed a firearm in furtherance of a drug trafficking crime in violations of 21 U.S.C. §§ 841(a)(1), 846, 952(a); and, 18 U.S.C. §§ 545 and 924 (c).

35. Based on the foregoing information, your affiant respectfully requests that a warrant of arrest be issued for James Campbell CARDWELL for violations of 21 U.S.C. §§ 841(a)(1), 846, 952(a); and 18 U.S.C. § 545 and 924(c).

36. This affidavit and the requested criminal complaint and arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Scott Kerin prior to being presented to the Court. AUSA Kerin informed me that in his opinion, the affidavit sets forth sufficient probable cause to support the issuance of the criminal complaint and arrest warrant.

37. I respectfully request the Court to authorize the attached arrest warrant and criminal complaint.

Sworn via phone on 5/30/2018 at 11:25am (FRCP 4.1)
Guy Gino, Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 30th day of May 2018.

HONORABLE STACIE F. BECKERMAN
United States Magistrate Judge